## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **TIMOTHY SCALONA**, on behalf of herself and all others similarly situated, <br><br> *Plaintiff*, <br><br> v. <br><br> **CAPITAL ONE BANK, USA, N.A.**, <br><br> *Defendants*. | **Case No. 1:25-CV-12153-MJJ** |

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S
### MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT
### OR IN THE ALTERNATIVE TO STRIKE CLASS ALLEGATIONS

## **Table of Contents**

Table of Authorities ................................................................................................ ii

I.    INTRODUCTION & BACKGROUND ..................................................... 1

II.   FACTS & ALLEGATIONS ....................................................................... 4

III.  LEGAL STANDARD................................................................................ 6

IV.   ARGUMENT ............................................................................................ 7

    A. May Plaintiff Sue Here Under M.G.L. 93 § 54A?   Answer: Yes. .......................... 7

    B. May Plaintiff Sue Here Under FCRA Section 1681s-2(b)?  Answer:  Yes........... 10

    C. May Plaintiff Pursue Class Claims?  Answer:  Yes................................................ 15

V.    CONCLUSION........................................................................................ 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)...................................................6

*In re Bank of Am. Home Affordable Modification Program (HAMP) Cont. Litig.*,
2013 WL 4759649 (D. Mass. Sept. 4, 2013) ...............................................................17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)...................................................6

*Brooks v. Trans Union, LLC*,
743 F. Supp. 3d 622 (E.D. Pa. 2024) ...........................................................................16

*Cao v. Hungry Pot Darmouth Inc.*,
2025 WL 1745685 (D. Mass. June 24, 2025) ...............................................................15

*Catanzaro v. Experian Info. Sols., Inc.*,
671 F. Supp. 2d 256 (D. Mass. 2009) .......................................................................9, 10

*Cavallaro v. UMass Mem. Health Care, Inc.*,
971 F. Supp. 2d 139 (D. Mass. 2013) ............................................................................6

*In re: Celexa & Lexapro Mktg. & Sales Practices Litig*,
2016 WL 3212480 (D. Mass. June 9, 2016)..................................................................15

*Chiang v. Verizon New Eng. Inc.*,
595 F.3d 26 (1st Cir. 2010)....................................................................................11, 17

*College of Dental Surgeons Of Puerto Rico. Connecticut Gen. Life Ins. Co.*, 585 F.3d 33, 41-42 (1st Cir. 2009).........................................................................19

*Costa v. Dvinci Energy, Inc.*,
342 F.R.D. 38 (D. Mass. 2022)....................................................................................19

*Erickson v. Pardus*,
551 U.S. (2007)..............................................................................................................6

*Feliciano v. CoreLogic Rental Property Solutions*,
LLC, 322 F.R.D. 98 (S.D.N.Y. July 29, 2019)...........................................................16

*FIA Card Services, N.C. v. Gormon*,
562 U.S. 828 (2010)................................................................................................10, 12

ii

*Gorman v. Wolpoff & Abramson*,
   584 F.3d 1147 (9th Cir. 2009) ........................................................................10, 11, 12

*Henderson v. PNC Bank, N.A*,
   2014 WL 4068231 (Sup. Ct. Mass. June 16, 2014) ........................................................9

*Hines v. Equifax Info. Servs.*,
   LLC, 2024 WL 4132333 (E.D.N.Y. Sept. 10, 2024) ...............................................16, 17

*Islam v. Option One Mortg. Corp.*,
   432 F. Supp. 2d 181 (D. Mass. 2006) ...........................................................................9

*Johnson v. MBNA Am. Bank, NA*,
   357 F.3d 426 (4th Cir. 2004) .......................................................................................11

*Kent v. SunAmerica Life Ins. Co.*,
   190 F.R.D. 271 (D. Mass. 2000)...................................................................................19

*Landgraff v. GEMB*,
   2007 WL 1101277 (E.D. Pa. Apr. 10, 2007) ...............................................................16

*Manning v. Boston Medical Center Corp.*,
   725 F.3d 34 (1st Cir. 2013)...........................................................................................15

*Mansaray v. T.D. Bank, N.A.*,
   No. 2:22-cv-05039-AB (E.D. Pa.) .................................................................................16

*McIntyre v. RealPage, Inc.*,
   336 F.R.D. 422 (E.D. Pa. 2020).............................................................................14, 16

*McIntyre v. RentGrow, Inc.*,
   2019 WL 349434 (D. Mass. Aug. 1, 2019) ..................................................................18

*In re Nexium Antitrust Litig.*,
   777 F.3d 9 (1st Cir. 2015).............................................................................................19

*Norman v. Trans Union, LLC*,
   479 F. Supp. 3d 98 (E.D. Pa. 2020) .............................................................................16

*Ocasio-Hernandez v. Fortuno-Burset*,
   640 F. 3d 1 (1st Cir. 2011).............................................................................................6

*Pimentel v. City of Methuen*,
   2019 WL 6699667 (D. Mass. Dec. 9, 2019)..................................................................20

*Rivera v. Equifax Info. Servs., LLC*,
   341 F.R.D. 328 (N.D. Ga. 2022)..............................................................................16, 17

iii

*Rosenberg v. LoanDepot.com LLC*,
    435 F.Supp.3d 308 (D. Mass. 2020) ..................................................................15

*Sagar v. Kelly Auto Grp., Inc.*,
    2021 WL 5567408 (D. Mass. Nov. 29, 2021) ......................................................19

*Saunders v. Branch Banking and Tr. Co. of Virginia*,
    526 F.3d 142 (4th Cir. 2008) ..........................................................11, 12, 13

*Seamans v Temple Univ.*
    744 F.3d 853 (3d Cir. 2014)..............................................................11, 12

*Shames-Yeakel v. Citizens Fin. Bank*,
    677 F. Supp. 2d 994 (N.D. Ill. 2009) ...........................................................13

*Soutter v. Equifax Info. Servs., LLC*,
    307 F.R.D 183 (E.D. Va. 2015) ...................................................................16

*Suluki v. Credit One Bank, NA*,
    138 F.4th 709 (2d Cir. 2025) ......................................................................17

*Turner v. Experian Info. Solutions Inc.*,
    2013 WL 3995166 (D. Me. Aug. 5, 2013)........................................................13

*U.S. v. Burghardt*,
    939 F.3d 397 (1st Cir. 2019).......................................................................12

**Statutes**

Cal. Civ. Code §§ 1785.25 et seq.....................................................................9,10

Fair Credit Reporting Act, 15 U.S.C §§ 1681 et seq .................................................. *passim*

Massachusetts General Law, chapter 93 section 54A(a) (as in effect on
    September 30, 1996) ...................................................................1, 7, 8, 9

**Rules**

Fed. R. Civ. P. 8(a) ................................................................................19

Fed. R. Civ. P. 12....................................................................................6, 15

Fed. R. Civ. P. 23....................................................................................3, 4, 16

## I.    INTRODUCTION & BACKGROUND

Plaintiff brings this action under the Fair Credit Reporting Act, 15 U.S.C §§ 1681 *et seq* ("FCRA") and the Massachusetts General Law ("M.G.L."), Chapter 93 § 54A, asserting claims on behalf of himself and other victims of identity theft, against Defendant Capital One Bank, U.S.A., N.A. ("Defendant" or "Capital One"), a bank and credit furnisher. ECF 17 (Plaintiff's Amended Complaint) ¶¶ 1, 6-8, 99-120. Plaintiff alleges that Defendant furnished fraudulent credit card information to the nationwide credit reporting agencies ("CRAs") even after identity theft victims like him notified Defendant of the fraud through police reports and/or Federal Trade Commission ("FTC") identity theft reports (the "police or FTC reports"). *Id.* Plaintiff also claims that despite knowledge of the police or FTC reports, Defendant routinely "verified" the fraudulent information in response to CRA-initiated disputes, instead of deleting the fraudulent information from its future credit reporting to the detriment of consumers like himself. *Id*.

In a case of identity theft disputes accompanied by a police or FTC report, like the case at bar, a bank like Defendant cannot simply continue credit reporting the dubious accounts unless it knows or is informed by the consumer that the information is correct.  *Id.* at ¶¶ 26-29.  This burden on the bank is triggered by the police or FTC reports, and is a much higher burden than in the case of a routine credit dispute, or even a dispute of fraud that is not accompanied by a police or FTC report. *Id.* at ¶¶ 12-28. Plaintiff alleges here that he provided Defendant both a police report and FTC report directly, *id.* at ¶¶ 50-51, and also notice of the same indirectly through the CRAs, *id.* at ¶¶ 52, 58, 62, but that Defendant nevertheless continued to report and even "verified" the fraudulent Capital One credit card accounts in response to multiple of his disputes to Defendant through the CRAs between at least July 2023 and February 2024. *Id.* at ¶¶ 50-70.  Plaintiff clearly alleges that Defendant engaged in this misleading and harmful reporting and credit "verification"

in response to the CRA-initiated disputes even though it lacked the required knowledge or information from the consumer that the accounts are actually correct, and instead had reasonable grounds to believe that the credit cards were a result of fraud. *Id.* at ¶¶ 59, 60, 71, 72.

Now Defendant argues that its misleading reporting of the fraudulent credit account information is allegedly not actionable under Massachusetts law even after receiving Plaintiff's police and FTC reports, purportedly because of the preemption provisions of the FCRA. ECF 23 at pp. 3, 18-20. Defendant is mistaken. The FCRA at section 1681t(b)(1)(F)(i) has an exception to the scope of its limited preemption precisely for the claim Plaintiff pleads here. FCRA preemption does not apply to claims under Massachusetts law, as discussed below.

Defendant also contends that even Plaintiff's federal FCRA claims (which supposedly preempt his state M.G.L. claim) are allegedly not actionable here, seeking to mischaracterize those claims as "reinsertion" claims and stating that "inaccuracy claims do not have a private right of action" under the FCRA. ECF 23 at p. 3. But Plaintiff's claims are under section 1681s-2*(b)* of the FCRA which does have a private right of action. 15 U.S.C. § 1681s-2(b) (emphasis added); ECF 17 at ¶¶ 20-28, 109-116. Moreover, FCRA section 1681s-2(b)(1)(E)(iii) has a provision requiring a credit furnishers such as Defendant to "permanently block" the reporting of unverifiable information, so a "reinsertion" theory is also actionable under FCRA section 1681s-2(b) if a deleted credit account is not deleted permanently but instead gets re-reported (or "reinserted") on a credit report from which it was once removed, as was the case here with Plaintiff's January-February 2024 disputes. *Id*. at ¶¶ 64-63. At any rate, even a cursory review at Counts I and II of Plaintiff's Amended Complaint, ECF 17 at ¶¶ 109-116, shows that Plaintiff's claims are under FCRA section 168s-2(b), and multiple Circuit Courts have uniformly held for decades that such claims may be prosecuted by individual consumers in private actions such as

this one, as discussed below.

Finally, Defendant alternatively seeks to strike the class allegations, but that is premature at this early stage of litigation.  Defendant contends that "courts simply do not" (ECF 23 at p. 1) certify FCRA section 1681s-2(b) claims, but Defendant does not cite to a single case for this bald proposition. Plaintiff is not aware of any court refusing to certify an FCRA section 1681s-2(b) claim or finding that such claims are uncertifiable in all circumstances. FCRA claims have been certified in many contexts by various federal courts, including in the analogous context of CRAs failing to properly investigate consumer credit disputes, as will be discussed below. Defendant is a credit "furnisher," not a "CRA," but much of that Rule 23 jurisprudence applies here given the close relationship between CRA and furnisher investigation duties under the FCRA.

Defendant would also like this Court to prejudge the case, without the benefit of any evidence, and find that "no story is the same and no investigation into identify theft is the same." ECF 23 at p. 2.  But the FCRA has objective standards and uniform legal requirements about how a credit furnisher like Defendant must process credit disputes in the case of a police or FTC report, which can support common legal issues under Rule 23. Also, what matters factually for Rule 23 purposes is not what each victim's "story" sounds like, but what procedures Defendant follows and how it communicates credit data to CRAs after receiving an identity theft dispute accompanied by a police or FTC report, as in Plaintiff's case. Plaintiff claims that such procedures are uniform. ECF 17 at ¶¶ 3-4, 35-44, 105. Defendant would like the class allegations dismissed on assumptions about a factual record that does not exist, on inferences about allegedly "individualized" treatment that is unsubstantiated and which are far-fetched for a large financial institution like Capital One, and on legal premises about what courts do or "simply do not do," *id.* at p. 1, in FCRA class cases like this one that are unfounded.

Moreover, the instant motion seeks to head off the question of class certification, an analysis that is guided by Fed. R. Civ. P. 23 and only appropriate after class certification discovery, motion practice, and possibly a hearing. As such, Defendant's attempt to strike Plaintiff's class certification allegations is immensely premature, and one of the reasons that the vast majority of jurisprudence disfavors motions to strike at this stage.

Defendant's motion must therefore be denied.

## II.    FACTS & ALLEGATIONS

Plaintiff is the victim of identity theft. Shortly after his eighteenth birthday, two credit card accounts were opened in his name with Defendant Capital One without his knowledge, authorization, or consent. Plaintiff did not apply for the accounts, did not use them, and did not receive any benefit from them. Plaintiff later learned that the accounts were fraudulently opened by his estranged stepfather. ECF 17 at ¶¶ 45–48.

Capital One nonetheless furnished the accounts to all three nationwide consumer reporting agencies (or "CRAs")—Experian, TransUnion, and Equifax—causing false and derogatory information to appear on Plaintiff's credit reports. *Id.* ¶ 49.

After discovering the fraudulent reporting, Plaintiff undertook the steps Congress specifically prescribed for victims of identity theft. On or about July 21, 2023, Plaintiff filed a police report with the Boston Police Department and completed an Identity Theft Report with the Federal Trade Commission, formally documenting that the Capital One accounts resulted from identity theft. *Id.* at ¶ 50.

On July 26, 2023, Plaintiff disputed the Capital One accounts both directly with Capital One and indirectly through Experian, TransUnion, and Equifax. Plaintiff enclosed the police report and FTC Identity Theft Report with his disputes and expressly requested removal of the fraudulent

accounts. *Id.* at ¶¶ 51–52. Each CRA transmitted Plaintiff's disputes to Capital One pursuant to 15 U.S.C. § 1681i(a)(2), thereby triggering Capital One's duties under 15 U.S.C. § 1681s-2(b). *Id.* at ¶ 53.

Despite receiving multiple CRA-transmitted disputes accompanied by official identity-theft documentation, Capital One "verified" the fraudulent accounts as supposedly accurate and belonging to Plaintiff. In August and September 2023, TransUnion and Experian each informed Plaintiff that Capital One had certified the disputed accounts as accurate and would continue reporting them on Plaintiff's credit reports. Capital One persisted in furnishing the accounts to all three CRAs. *Id.* at ¶¶ 54–56.

Plaintiff again disputed the accounts in September 2023 and requested statutory fraud blocks from Experian and TransUnion pursuant to 15 U.S.C. § 1681c-2. Rather than permanently blocking the accounts, the CRAs contacted Capital One, and Capital One again verified the accounts despite the previously submitted police and FTC reports. *Id.* at ¶¶ 57–60.

Plaintiff disputed the accounts a third time in December 2023 and renewed his fraud-block requests with all three CRAs with the appropriate police and FTC reports. Each CRA again transmitted notice of the disputes to Capital One. *Id.* at ¶¶ 61–63.

In January and February 2024, Experian and TransUnion deleted and blocked the Capital One accounts from Plaintiff's credit reports, further confirming that the accounts were the result of identity theft. Days later, however, the CRAs reinstated the same accounts at Capital One's direction, despite the prior statutory blocks and the extensive identity-theft documentation Capital One had received. *Id.* ¶¶ 64–69.

At all relevant times, Capital One understood the nature of Plaintiff's disputes, possessed police and FTC reports establishing identity theft, and had no reasonable basis to conclude that the

accounts were legitimate. Nevertheless, Capital One repeatedly verified the accounts, failed to conduct a reasonable investigation after receiving CRA notice, and continued furnishing inaccurate information, causing ongoing harm to Plaintiff. *Id.* ¶¶ 70–73.

Capital One routinely fails to properly address fraud when presented with all of the necessary documentation.

### III.    LEGAL STANDARD

In ruling on a motion to dismiss under Rule 12(b)(6), "a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), "even if it strikes a savvy judge that actual proof of those facts is improbable." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F. 3d 1, 12 (1st Cir. 2011) (internal quotation marks omitted). To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 127 S.Ct. 1955, 1960, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant as acted unlawfully." *Id* at 678.

Under Rule 12(f), a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." When analyzing a motion to dismiss or strike class allegations at the pleading stage, the court must accept all allegations in the complaint as true and make all reasonable inferences in favor of the non-moving party. *Cavallaro v. UMass Mem. Health Care, Inc.*, 971 F. Supp. 2d 139, 145 (D. Mass. 2013); *Bessette v. Avco Fin. Servs.*, Inc. 279 B.R. 442, 447, 450 (D. R.I. 2002).

## IV.    ARGUMENT

### A.  May Plaintiff Sue Here Under M.G.L. 93 § 54A?   Answer: Yes.

In late July 2023, Plaintiff went to his local police and to the FTC and, under penalty of perjury, made reports of credit card fraud and identity theft regarding two Capital One credit accounts opened in his name and without his knowledge or authorization.  ECF 17 at ¶¶ 48, 50.[1] He then informed Capital One of the fraud and sent to Defendant the police and FTC reports several times beginning on July 26, 2023. *Id.* at ¶¶ 51-73. Nevertheless, Defendant kept furnishing to the nationwide CRAs (and thus on Plaintiff's credit reports) the two fraudulent and derogatory Capital One credit accounts, harming Plaintiff's financial standing and reputation and causing other injuries. *Id.* at ¶¶ 76-98. After multiple rejections of his disputes, Plaintiff sued Defendant under the Massachusetts General Law at Chapter 93, which provides in pertinent part:

> Every person who furnishes information to a consumer reporting agency shall follow reasonable procedures to ensure that the information reported to a consumer reporting agency is *accurate and complete*. No person may provide information to a consumer reporting agency if such person knows *or has reasonable cause to believe* such information is not accurate or complete.

M.G.L. 93 § 54A(a) (emphasis added). ECF 17 at ¶¶ 117-120.  At a very minimum, the police and FTC reports gave Defendant "reasonable cause to believe" that its credit reporting was not accurate or complete.

Defendant now claims that even if it furnished inaccurate and incomplete information to the CRAs about him, Plaintiff is out of luck because the FCRA allegedly preempts this

---

[1]     It is generally acknowledged that such reports are under penalty of perjury. *See* Senate Report dated October 17, 2003, explaining that "blocks" will require "identity theft report  . . . that has been filed with an appropriate law enforcement or local government agency, that subjects the person filing the report to criminal penalties if, in fact, the information in the report is false." https://www.congress.gov/committee-report/108th-congress/senate-report/166/1 at Sec. 152.

Massachusetts law claim and does not allow him to sue to enforce the above-quoted provision. ECF 23 at 3and 19-20.  Defendant is mistaken.

The FCRA provides that:

Except as provided in subsections (b) and (c), this subchapter *does not annul*, alter, affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to the collection, distribution, or use of any information on consumers, or for the prevention or mitigation of identity theft, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency.

15 U.S.C. § 1681t(a) (emphasis added).  The FCRA therefore does *not* preempt the field of credit reporting and the federal statute expressly limits its preemption to those provisions specified in "subsections (b) and (c)" section 1681t and preempts only "to the *extent that [State] laws are inconsistent* with any provision of this subchapter, *and then only to the extent of the inconsistency*." *Id.* (emphasis added).  As a general rule, therefore, FCRA preemption is limited.

It also bears noting that there is nothing "inconsistent" between the Massachusetts law that Plaintiff seeks to enforce here and the FCRA. Indeed, the proscriptions of M.G.L. 93 § 54A(a) quoted above are almost identical to FCRA section 1681s-2(a)(1)(A) ("A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate.").

It is true that the preemption language of subsections (b) of FCRA section 1681t includes a paragraph that encumbers claims under FCRA section "1681s-2" as being preempted, but the full text of that paragraph, which Defendant fails to quote in its motion, reads:

except that this paragraph *shall not apply—*
(i)with respect to section 54A(a) of chapter 93 of the Massachusetts Annotated Laws (as in effect on September 30, 1996); or
(ii) with respect to section 1785.25(a) of the California Civil Code (as in effect on September 30, 1996).

15 U.S.C. 1681t(b)(F) (emphasis added). Claims under M.G.L. 93 § 54A(a), the exact claim Plaintiff brings here, are therefore expressly saved from any FCRA preemption. *Id*.

Defendant suggests a tortured and self-serving reading of this provision, suggesting the nonsensical conclusion that Congress expressly preserved the substance of M.G.L. 93 § 54A(a), but left consumers without any mechanism to enforce their rights under this provision by not explicitly and separately preserving the private right of action found at § 56(A)(g). But courts in Massachusetts have routinely rejected this position, noting that it "would be absurd to conclude that Congress intended to have explicitly excepted [ §54(A)] while not leaving an enforcement mechanism.'" *Catanzaro v. Experian Info. Sols., Inc.*, 671 F. Supp. 2d 256, 260-61 (D. Mass. 2009) (quoting *Islam v. Option One Mortg. Corp.*, 432 F. Supp. 2d 181, 189 (D. Mass. 2006)).[2]

The detailed decision by the Superior Court of Massachusetts in *Henderson v. PNC Bank, N.A*, 2014 WL 4068231 (Sup. Ct. Mass. June 16, 2014) is particularly instructive, conducting a careful textual analysis of FCRA section 1681t, M.G.L. § 54(A), and the existing case law concerning preemption of § 54(A)(g) before concluding that the private right of action is not preempted. *Id.* at *1 (noting that *Leet* and *Gibbs* decisions finding preemption have "little to no substantive analysis").

Also of note is the settled Circuit court authority making clear that the nearly identical provision of California law saved from preemption by the same subsection of FCRA section 1681t, which finds that the corollary California private right of action is preserved from preemption. *Gorman v. Wolpoff & Abramson*, 584 F.3d 1147, 1170-71 (9th Cir. 2009) (rejecting proposition

---

[2] The *Islam* decision finding in favor of preemption was premised upon the agreement of the parties that the Massachusetts Attorney General has the authority to enforce § 54A(a). No such record exists here, and the Massachusetts Superior Court later investigated the issue when considering the same preemption question presented in *Islam* and the present case, and highlighted its troubling "inability to locate any legal authority or factual precedent in Massachusetts for such a conclusion." *Henderson v. PNC Bank, N.A.*, 2014 WL 4068231, at *1 (Sup. Ct. Mass. June 16, 2014).

that Cal. Civ. Code § 1785.25(g) is preempted because "the conclusion that Congress explicitly retained the portions of the California statutory scheme that create obligations, without leaving in place any enforcement mechanism . . . would be an unlikely result at best.") *cert denied sub nom FIA Card Services, N.C. v. Gormon*, 562 U.S. 828 (2010).

Finding that the private enforcement mechanism of § 54(A) is not preempted by the FCRA is also supported by a plain meaning interpretation of FCRA section 1681t(b)(1)(F), which on its face preempts only "requirements" or "prohibitions." As this court held in *Catanzaro*, § 54(A)(g) "is not a 'requirement' or 'prohibition,' but simply a mechanism allowing private litigants to enforce a state standard for credit reporting that Congress deliberately chose not to preempt" and does not directly regulate any conduct by CRAs or furnishers. 671 F.Supp.2d at 261. This plain meaning reading of the statute must prevail over Defendant's tortured reading, which rests upon scant legal analysis and faulty assumptions regarding government enforcement. This Court should find consistent with this plain, common sense reading of the FCRA that Plaintiff's claims in Count III are not preempted and deny Defendant's motion.

### B.  May Plaintiff Sue Here Under FCRA Section 1681s-2(b)?  Answer:  Yes.

Defendant not only moves to dismiss Plaintiff's Massachusetts state law claim, but also the FCRA federal claim that supposedly preempts the state law claim. ECF 23 at p. 3, 13-16. In Defendant's view, Plaintiff cannot get any relief (state or federal) under the circumstances here from any court in a case against Defendant. Must Plaintiff just accept identity theft and false credit reporting?  Must he learn to live with it as long as Capital One may wish to report it against him?[3]

---

[3]    As Defendant acknowledges, Plaintiff also brought litigation against the CRAs in an attempt to solve the identity theft problem through them. But according to Defendant's view, even if the CRAs stop reporting the fraudulent Capital One accounts because of that separate litigation, Defendant can apparently re-report the fraudulent Capital One accounts with impunity in the future, since no cause of action is viable (allegedly) for Plaintiff against Defendant regarding its continued reporting of the fraudulent accounts.

Defendant's argument with respect to the FCRA borders the absurd. Defendant argues that Plaintiff "actually alleges a violation under an entirely separate provision of the FCRA." ECF 23 at p 13. In reality, Plaintiff specified the exact provisions of the FCRA that Defendant violated in paragraphs 109-116 (Counts I and II) of this Amended Complaint, and these claims are what Plaintiff pleads they are – under FCRA section 1681s-2(b) – not something else. ECF 17 at ¶¶ 109-116. There is no "separate" FCRA claim, no other FCRA Count in the Amended Complaint, regardless of what Defendant imagines. Defendant cannot so easily have an FCRA section 1681s-2(b) claim dismissed because it misleading states that Plaintiff "actually" pleads an "entirely separate" claim. He does not.

Nor is there question, in this Circuit or any other Circuit, that a plaintiff may bring an FCRA section 1681s-2(b) private cause of action against a credit furnisher bank such as Defendant here for its faulty investigations into Plaintiff's dispute initiated through the CRAs. *Chiang v. Verizon New Eng. Inc.*, 595 F.3d 26, 37 (1st Cir. 2010); *see also Seamans v Temple Univ.* 744 F.3d 853, 864 (3d Cir. 2014); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009); *Saunders v. Branch Banking and Tr. Co. of Virginia*, 526 F.3d 142, 147 (4th Cir. 2008); *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004).

Moreover, any purported confusion regarding the nature of Plaintiff's claims is of Defendant's own making. The fact that Plaintiff's factual allegations include citations to other provisions of the FCRA is neither confusing nor problematic – far from it. These other statutory provisions inform what is considered complete and accurate credit information under FCRA section 1681s-2(b) and what may constitute a reasonable investigation in disputed information under FCRA section 1681s-2(b), the only FCRA statutory provision that Plaintiff seeks to enforce here. This is consistent with widely accepted and applied canons of statutory construction. *U.S. v.*

*Burghardt*, 939 F.3d 397, 407-08 (1st Cir. 2019) (noting the "'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'") (quoting *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 666 (2007)).

And indeed, many federal courts have leaned on such an analytical framework in interpreting the exact provisions at issue here. At least three circuit courts have looked to provisions in FCRA section 1681s-2(a) in order to determine what can be reasonable and complete credit reporting with respect to investigations conducted under FCRA section 1681s-2(b). *Saunders*, 526 F.3d at 149-50 citing both section s-2(a) and s-2(b) and finding that "[t]he second subsection thus requires furnishers to review their prior report for accuracy and completeness; it does not set forth specific requirements as to what information must be reported, *because these requirements have already been set forth in the first subsection*.") (emphasis added); *Seamans*, 744 F.3d at 866–67; *Gorman*, 584 F.3d at 1164. Each of these Circuit courts addressed whether a furnisher addressing a consumer's indirect dispute had an obligation under FCRA section s-2(b) had an obligation to report the existence of a consumer's dispute, and each looked to the obligation to flag an account as disputed under section s-2(a)(3) to conclude that the omission of the dispute was an actionable violation of section s-2(b). *Saunders*, 526 F.3d at 149-50; *Seamans*, 744 F.3d at 866-67; *Gormon*, 584 F.3d at 1163-64.

Similarly, Plaintiff asserts that Defendant's obligations when faced with an indirect dispute after it was previously put on notice that the disputed account was affected by fraud, supported by a police or FTC report, is informed by its obligation under FCRA section s-2(a), specifically the obligation set forth at section s-2(a)(6)(B) prohibiting furnishers from continuing to report information that is the subject of an identity theft report unless the furnisher "knows or is informed

-12-

by the consumer that the information is correct." Just as a furnisher's obligation under s-2(b) to mark an account as disputed is informed by s-2(a)(3), Plaintiff's assertion is that Defendant's obligations under s-2(b) with respect to fraud disputes supported by police or FTC reports are informed by s-2(a)(6)(B). As a result Defendant may not verify its reporting of accounts disputed with a police or FTC report unless it knows or is informed by the consumer that the information is correct. Plaintiff's assertion in this case is that as a matter of standardized practice and procedure, neither of these conditions is met with respect to Capital One's verifications of indirect ID theft disputes.

At least one court has indicated that the same reasoning applied in *Saunders* applies to the identity theft provision of FCRA section s-2(a)(6)(B). *Shames-Yeakel v. Citizens Fin. Bank*, 677 F. Supp. 2d 994, 1005 (N.D. Ill. 2009). And courts within this Circuit have rejected challenges to FCRA section s-2(b) claims at the pleadings stage premised on the same faulty assertion that conflates s-2(a) and s-2(b) claims. *See Turner v. Experian Info. Solutions Inc.*, 2013 WL 3995166 (D. Me. Aug. 5, 2013) (rejecting furnisher's contention that re-reporting erroneous information was new, non-actionable violation of § 1681s-2(a): "Such a reading would effectively nullify the protections extended under section 1681s-2(b)(1)(E) . . . [I]f the tradeline persisted because of new reporting activity by HSBC, then such re-reporting would reflect a failure on HSBC's part to modify, delete, or permanently block the reporting of that item of information").

Furthermore, the First Circuit has also interpreted duties found in one section of the FCRA by considering other provisions found within the statute. For example, *in McIntyre v Rent Grow, Inc.,* the First Circuit considered whether a defendant CRA had violated FCRA section 1681e(b) willfully. 34 F.4th 87 (1st Cir. 2022). In doing so, the First Circuit looked not only into FCRA section 1681n but also FCRA section 1681s(e), concurring the power of government agencies to

issue regulatory guidance including through Supervisory Highlights. *Id.* at 99-100.  Through FCRA 1681s(e), the First Circuit examined certain Supervisory Highlights issued by the Consumer Financial Protection Bureau ("CFPB") which framed the duty under FCRA section 1681e(b) and whether compliance with section 1681e(b) can be found to be negligent or willful in the context of that case.  *Id.* This framing did not change the only claim at issue in *McIntyre*, under FCRA section 1681e(b), or turn it into an entirely separate claim. It merely informed the proper context in which to construe the FCRA section 1681e(b) claim in that situation.

This type of framework is very common in civil law in general. For example, it has long been held that a court may rely upon a statute for a legal duty in order to determine whether a party acted negligently.  Restatement (3d) on Torts: Liability for Physical Harm § 14 (adopted 2005; published 2010) (Statutory Violations as Negligence P*er Se*) ("An actor is negligent if, without excuse, the actor violates a statute that is designed to protect against the type of accident . . . ."). Considering a statutory duty in a common law negligence case does not transform the negligence claim into a statutory claim. Similarly, considering what the FCRA instructs credit furnishers to do in the case of a police or FTC report does not transform an FCRA section 1681s-2(b) claim into some "entirely separate" claim. But it can properly inform what type of investigation may be considered reasonable under those circumstances, and what factors a section 1681s-2(b) investigation should consider in cases of identity theft disputes supported by police or FTC reports.

Plaintiff's FCRA section 1681s-2(b) claims are plainly cognizable and actionable in a private cause of action like the one at bar.  The fact that Plaintiff's averments include citations to other sections of the FCRA is of no moment. They do not wipe out the FCRA section 1681s-2(b) claim. Rather, they are instructive in setting the proper context to construe the section 1681s-2(b) claim here. Defendant's motion to dismiss must therefore be denied.

**C. May Plaintiff Pursue Class Claims?  Answer:  Yes**

Dismissing or striking class allegations under Rule 12 is disfavored for two important reasons.  *Manning v. Boston Medical Center Corp.*, 725 F.3d 34, 59 (1st Cir. 2013).  First, these motions are "not calculated readily to invoke the court's discretion" because they are a drastic and often dilatory tactic.  *Id.* (citing *Boreri v. Fiat S.p.A.*, 763 F.3d 17, 12 (1st Cir. 1985) and 5C Charles Alan Wright, et. al., *Federal Practice & Procedure* § 1380 (3d ed.2011)).  Second, striking class allegations is disfavored "because it requires a reviewing court to preemptively terminate class aspects of … litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." *Id*. (quoting *Mazzola v. Roomster Corp.*, 849 F. Supp. 2d 395, 410 (S.D.N.Y. 2012)). A court should strike class allegations only where "it is obvious from the pleadings that the proceeding cannot possibly move forward on a classwide basis." *Id.* (emphasis added); s*ee also Cao v. Hungry Pot Darmouth Inc.*, 2025 WL 1745685, at *4 (D. Mass. June 24, 2025); *Rosenberg v. LoanDepot.com LLC*, 435 F.Supp.3d 308, 318 (D. Mass. 2020); *In re: Celexa & Lexapro Mktg. & Sales Practices Litig*, 2016 WL 3212480, at *4–5 (D. Mass. June 9, 2016) ("The Court concludes that striking the class allegations at this preliminary stage would, however, be premature. The Court will consider the propriety of allowing the litigation to proceed as a class action after plaintiffs have had an opportunity to submit their anticipated motion for class certification"). To date, the parties in this case have not exchanged any written discovery, depositions have not occurred, and no class certification briefing has been filed, making resolution of the class allegations here entirely premature.

Capital One's arguments for striking class allegations must also be rejected because they rely not upon what is alleged in the complaint, but upon self-serving assumptions about the record

will show. First, Defendant's bald assertion that courts "simply do not" certify class actions under section 1681s-2(b) (Def. Mem. at p. 6) is entirely lacking in any support.[4] To the contrary, courts have certified or preliminarily approved settlement classes bringing claims under FCRA section 1681s-2(b), including one case against Capital One itself. *See Mansaray v. T.D. Bank, N.A.*, No. 2:22-cv-05039-AB (E.D. Pa.) at ECF 96 (Apr. 28, 2025 Order certifying claims of class with section s-2(b) claims); *Kromrey, et al. v. Capital One N.A.*, No. 3:24-cv-00575 at ECF 58 (Dec. 3, 2025 Order finding Rule 23 satisfied for settlement of s-2(b) claim against Capital One).

More regularly courts certify claims for FCRA statutory damages, like the case at bar, even where they involve issues related to accuracy and reinvestigation of consumer disputes, where they involve standardized procedures. *McIntyre v. RealPage, Inc*., 336 F.R.D. 422, 438 (E.D. Pa. 2020) (certifying FCRA class action regarding inaccurate reporting in light of CRA's standardized "policy, practice, or procedure that, effectively, produces the same result – the generation of inaccurate reports"); *Norman v. Trans Union, LLC*, 479 F. Supp. 3d 98 (E.D. Pa. 2020) (certifying claim under FCRA section 1681i for failure to reinvestigate consumer disputes of inquiry data); *Hines v. Equifax Info. Servs*., LLC, 2024 WL 4132333 (E.D.N.Y. Sept. 10, 2024) (same); *Rivera v. Equifax Info. Servs., LLC*, 341 F.R.D. 328, 346 (N.D. Ga. 2022) (same); *Brooks v. Trans Union, LLC*, 743 F. Supp. 3d 622 (E.D. Pa. 2024) (certifying FCRA section 1681e(b) claim); *Feliciano v. CoreLogic Rental Property Solutions*, LLC, 322 F.R.D. 98 (S.D.N.Y. July 29, 2019) (same); *Soutter v. Equifax Info. Servs., LLC*, 307 F.R.D 183, 201-02 (E.D. Va. 2015) (same).

---

[4]    The sole case Defendant cites involved a plaintiff's effort to amend her complaint near the close of fact discovery to add class allegations.  Def. Mem. at p. 6 fn. 7 (citing *Landgraff v. GEMB*, 2007 WL 1101277, at *3-4 (E.D. Pa. Apr. 10, 2007)).  Applying case law from the Sixth Circuit, the *Landgraff* court found that the plaintiff, even with the benefit of nearly-complete discovery, did not assert facts allowing the court to "reasonably infer that the mandatory prerequisites" of Rule 23 were met.  2007 WL 1101277, at *7.  This, of course, is an entirely different legal standard than the one routinely applied in this Circuit for motions to strike class allegations prior to discovery.

Nothing about the First Circuit's decision in *Chiang v. Verizon New England, Inc.*, 595 F.3d 26 (1st Cir. 2010) is to the contrary. Indeed, *Chiang* was decided at summary judgment, where the court had the benefit of a full record regarding the nature of the consumer's dispute, the furnisher's practices and procedures, and the actions actually taken in response to the consumer's dispute. *Id.* at 39-40. And *Chiang* clearly holds that the contents of a consumer's own statements and disputes constitute may constitute proof of inaccuracy. *Id.* at 39. Notably, multiple courts have held that consumer disputes can constitute *prima facie* class-wide evidence of inaccuracy for purposes of a claim under section 1681i, which, like section 1681s-2(b), includes an inaccuracy element. *Rivera*, 341 F.R.D. at 346 (class members can establish inaccuracy through common evidence in the form of their dispute letters); *Hines*, 2024 WL 4132333, at *4 (same).[5]

Defendant's argument that "every investigation is different" fares even worse, since it asks this court to disregard the factual allegations of the Amended Complaint in favor of self-serving assumptions about what the record will show. The Amended Complaint clearly and repeatedly alleges that Capital One relies upon standardized procedures for responding to consumer notifications that accounts were impacted by fraud and identity theft, including those which are accompanied by police or FTC reports. ECF 17 at ¶¶ 3-4, 35-44, 105. Defendant's citation to cases decided at summary judgment, including *Chiang* and *Suluki v. Credit One Bank, NA*, 138 F.4th 709 (2d Cir. 2025) are unhelpful, since they were each individual cases decided after complete discovery. And of course, "fact-dependent" is not the same as "individualized."

Plaintiff's allegation, which must be taken as true at this stage, is that Capital One routinely and as a matter of standardized practice does not consult all relevant information

---

[5]    Defendant's citation to *In re Bank of Am. Home Affordable Modification Program (HAMP) Cont. Litig.*, 2013 WL 4759649, at *8 (D. Mass. Sept. 4, 2013), a case decided following complete fact discovery and bringing claims on a breach of contract theory, has no relevance to this case bringing different claims and at a different procedural posture.

provided by consumers, including police or FTC reports, and instead continues to report fraudulent account information without any independent knowledge that the accounts are accurate. ECF 17 at ¶¶ 3-4, 35-44, 105. As discussed above, such standardized procedures are more than sufficient to support class certification.[6]

Another FCRA class action in this District that faced a similar motion to strike class allegations illustrates this point. In *McIntyre v. RentGrow, Inc.*, 2019 WL 349434, at *3 (D. Mass. Aug. 1, 2019), Judge Burroughs rejected the defendant's assertion that determining inaccuracy of consumer reports was inherently individualized, in light of the complaint's allegations regarding standardized practices that impacted consumers' reports in similar ways. Instead, the court concluded that "[o]nly discovery can show whether the inaccuracies alleged were widespread and similar enough to support class certification." *Id.* The same is true here: Plaintiff has alleged that Capital One routinely continues to report accounts identified as being the result of fraud despite having notice of consumers' police and/or FTC reports and without actual knowledge of the validity of the accounts. ECF 17 at ¶¶ 3-4, 35-44, 105. Only discovery can show whether these practices were sufficiently widespread and cohesive to support class certification.

Furthermore, Defendant's claims that the class allegations should be stricken because Plaintiff has not included a class definition in the Amended Complaint, and because the Amended Complaint thus asserts an "fail-safe" class each fail. First, nothing requires a concrete class definition to be included in a class action *complaint*, and Defendant cites no authority for such a proposition. Indeed, the First Circuit has clearly held that:

---

[6]    In fact, the Consumer Financial Protection Bureau, the federal agency charged with enforcement of the FCRA, has determined that standardized procedures can be a sufficient basis to hold a furnisher liable under FCRA section s-2(b) on behalf of a group of similarly situated consumers, as shown by a 2023 enforcement action ordering relief on behalf of a group of consumers affected by a furnisher's inadequate reinvestigation procedures and reliance on insufficient data. *Phoenix Financial Services, LLC, No*. 2023-CFPB-0004 at ¶¶ 3(a), 10, 12-16, 44, 47, 79 (June 8, 2023), *available at* https://files.consumerfinance.gov/f/documents/cfpb_phoenix-financial-services-llc_consent-order_2023-06.pdf

[C]lass composition (including compliance with the requirements of Rule 23) is not the issue at the inception of a class action. In all but the clearest of cases, the existence vel non of a sufficiently defined class is appropriately addressed after some development of the facts and under Rule 23's established protocol for weighing the propriety of class certification. Reviewing the complaint alone is not normally a suitable method for determining whether a class eventually can be certified….. It follows, we think, that reviewing the complaint alone is not normally a suitable occasion for determining whether the plaintiff has sufficiently defined a cognizable class.

*College of Dental Surgeons Of Puerto Rico. Connecticut Gen. Life Ins. Co.*, 585 F.3d 33, 41-42 (1st Cir. 2009) (emphasis original) (internal citations omitted).[7] All that is required is to put the defendant on notice of the nature and general scope of the allegations at issue, and the fact that class-wide relief is sought. *Id.*; Fed. R. Civ. P. 8(a).

Next, Plaintiff sets forth a series of factual criteria which may impact class membership (ECF 17 at ¶ 100), making this is the opposite of a fail-safe class defined "in terms of the defendant's liability." *In re Nexium Antitrust Litig.*, 777 F.3d 9, 22 (1st Cir. 2015). Reference to specific factual criteria, including factors set forth by statute, does not render a proposed class an impermissible fail-safe class. *Costa v. Dvinci Energy, Inc.*, 342 F.R.D. 38, 40-41 (D. Mass. 2022); *Sagar v. Kelly Auto Grp., Inc.*, 2021 WL 5567408, at *7 (D. Mass. Nov. 29, 2021).

Even if these non-exclusive and nonbinding factual criteria could be considered a "fail-safe" class, courts in this district routinely recognize that issues of class definition, including both over-breadth and fail-safe definitions, "'can and often should be resolved by refining the class definition rather than by flatly denying class certification on that basis.'" *Douglas v. EF Institute for Cultural Exchange, Inc.*, 2023 WL 1993499, at *5 (D. Mass. Feb. 14, 2023) (quoting *O'Hara*

---

[7]    Defendant chooses to relegate this binding precedent to a footnote and ignore its true holding, citing instead a case decided a decade earlier with the benefit of two years of discovery. *Kent v. SunAmerica Life Ins. Co.*, 190 F.R.D. 271, 273 (D. Mass. 2000). Defendant's decades-old citations from other jurisdictions, involving preliminary injunctions, and complaints that have no class allegations at all, are likewise inapplicable and unhelpful.

-19-

*v. Diageo-Guinness, USA, Inc.*, 306 F. Supp. 3d 441, 468 (D. Mass. 2018)); *Pimentel v. City of Methuen*, 2019 WL 6699667, at *3 (D. Mass. Dec. 9, 2019) (noting that "[a] court may, in an exercise of its discretion, revise a proposed class definition to avoid the problem of a fail-safe class") (internal citation and quotation marks omitted).

Plaintiff's Amended Complaint puts Capital One on detailed notice of the nature of the claims against it, and the scope of similarly situated individuals anticipated to be in the classes here: individuals who put Capital One on notice that their accounts were impacted by fraud and submitted a police or FTC report, Capital One lacked any knowledge or information that the reports were accurate, and Capital One verified and/or continued to report the disputed accounts.

Capital One's claim that such individuals cannot be identified through objective evidence cannot be credited: it defies logic that a large financial institution subject to detailed regulation including the FCRA's procedures regarding identity theft disputes would fail to keep records concerning consumer communications, and its resulting communications with CRAs which occur in largely standardized format. In any event, the issue of whether a class can be identified through objective evidence is squarely a question for class certification following discovery. A decision based upon assumptions about what the factual record will show is improper at this early stage and contrary to this Circuit's precedents. Defendant's premature effort to cut off class treatment must be rejected, and any decision related to class allegations should be reserved until after discovery has been completed and the requisite class certification briefing has occurred.

## V.    CONCLUSION

For all the reasons set forth above, Plaintiff respectfully requests that this Court deny Defendant's Motion to Dismiss and Strike Class Claims.

Respectfully submitted,

**FRANCIS MAILMAN SOUMILAS, P.C.**

BY: *John Soumilas*
    John Soumilas*
    1600 Market Street, 25th Floor
    Philadelphia, PA 19103
    T: 215-735-8600
    F: 215-940-8000
    jsoumilas@consumerlawfirm.com
    *admitted pro hac vice*

    Christopher M. Lefebvre
    (BBO #629056)
    **CLAUDE LEFEBVRE CHRISTOPHER M.**
    **LEFEBVRE, PC**
    P.O. Box 479
    Pawtucket, RI 02862
    T: (401) 728-6060
    F: (401) 728-6534

-21-

-22-

**CERTIFICATE OF SERVICE**

I, John Soumilas, hereby certify that on January 19, 2026, a true and correct copy

of the foregoing was served via ECF filing, upon counsel of record.


/s/ *John Soumilas*
John Soumilas